1  Shelley G. Hurwitz (SBN 217566)
   HOLLAND & KNIGHT LLP
2  633 W. Fifth Street, 21st Floor
   Los Angeles, CA 90071
3  Telephone: (213) 896-2400
   Facsimile (213) 896-2450
4  Email: shelley.hurwitz@hklaw.com

5
   Beth S. Naylor (*admitted pro hac vice*)
6  Douglas R. Dennis (*admitted pro hac vice*)
   FROST BROWN TODD LLC
7  2200 PNC Center
   201 East Fifth Street
8  Cincinnati, Ohio 45202
   Telephone: (513) 651-6727
9  Facsimile: (513) 651-6981
   Email: ddennis@fbtlaw.com
10
11 Attorney for Defendants IRWIN INDUSTRIAL TOOL COMPANY, INC.
12 and THE HOME DEPOT, INC. and Third-Party Plaintiff BERNZOMATIC

13

14            **UNITED STATES DISTRICT COURT**

15       **SOUTHERN DISTRICT OF CALIFORNIA – SAN DIEGO**

| | |
|---|---|
| 16 ANDREW SHALABY, an individual, and SONIA DUNN-RUIZ an individual, | **Case No.: 07-CV-2107 W BLM** |
| 17                    Plaintiffs, | **AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO DESIGNATE EXPERT WITNESS JASON LUSK** |
| 18          vs. | |
| 19 IRWIN INDUSTRIAL TOOL COMPANY, THE HOME DEPOT, INC., and DOES 2 through 100, inclusive, | |
| 20 | |
| 21          Defendants. | Judge: Hon. Thomas J. Whelan<br>Magistrate Judge: Hon. Barbara Major |
| 22 BERNZOMATIC, | **Date: October 2, 2008** |
| 23          Third Party Plaintiff,<br>          vs. | **Courtroom: A**<br>**NO ORAL ARGUMENT REQUIRED** |
| 24 | |
| 25 WESTERN INDUSTRIES, INC.,<br>WORTHINGTON INDUSTRIES, AND ROES 2 through 100, inclusive, | Mand. Settlement Conf: October 14, 2008<br>Pretrial Conference: January 12, 2009 |
| 26 | |
| 27          Third Party Defendants. | **[FILED IN COMPLIANCE WITH BRIEFING SCHEDULE ORDERED BY COURT]** |
| 28 | |

CASE NO.: 07-CV-2107 W                    1
AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO DESIGNATE EXPERT

## AUTHORITIES IN SUPPORT OF MOTION

Irwin Industrial Tool Company, Inc. and the Home Depot, Inc, and Third-Party Plaintiff Bernzomatic (together the "Bernzomatic Defendants") submit the following authorities in support of their Motion for Leave to Designate Jason Lusk as an Expert Witness in this matter:

1.    *Excelsior College v. Frye,* 2005 WL 5994158 (S.D. Cal 2005).

2.    *Justin v. City and County of San Francisco,* 2008 WL 544466 (N.D. Cal. 1994).

3.    *National Railroad Passenger Corp. v. Expresstrak LLC*, 2006 WL 2711533 (D.D.C. 2006).

4.    *Pembroke v. City of San Rafael*, 1994 WL 443683 (N.D. Cal. 1994).


Dated: September 12, 2008                     HOLLAND & KNIGHT LLP


                                     /s Shelley G. Hurwitz
                                     SHELLEY G. HURWITZ
                                     Attorney for Defendants
                                     IRWIN INDUSTRIAL TOOL COMPANY, INC.
                                     and THE HOME DEPOT, INC. and Third-Party
                                     Plaintiff BERNZOMATIC

1
2
3
4
5
6       **EXHIBIT 1:** *Excelsior College v. Frye*, **2005 WL 5994158 (S.D. Cal 2005).**
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Slip Copy, 2005 WL 5994158 (S.D.Cal.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. California.
EXCELSIOR COLLEGE, Plaintiff,
v.
Charles M. FRYE, Professional Development Systems School of Health Sciences, West Haven University, Defendants.
Civil No. 04CV0535-WQH (LSP).
Dec. 27, 2005.

Named Expert: Margaret E. Giffin
Alana M. Fuierer, David P. Miranda, Heslin Rothenberg Law Firm, Albany, NY, John L. Haller, Gordon and Rees, San Diego, CA, for Plaintiff.

Charles M. Frye, Long Beach, CA, pro se.

Kenneth C. Simonian, Law Office of Kenneth C. Simonian, Huntington Beach, CA, for Defendants.

**ORDER DENYING DEFENDANTS' MOTIONS FOR LEAVE TO DESIGNATE AN EXPERT WITNESS (143-1) TO CONDUCT ADDITIONAL DAMAGES DISCOVERY (148-1)**

LEO S. PAPAS, United States Magistrate Judge.
*1 Pending before the Court are motions filed by Defendants Charles M. Frye, Professional Development Systems School of Health Sciences and West Haven University to belatedly designate an expert witness and to propound interrogatories. Plaintiff Excelsior College opposes both motions. The motions came for hearing on December 1, 2005. Counsel participated telephonically. In attendance were David P. Miranda, Esq. and Alana M. Fuierer, Esq. on behalf of Plaintiff and David H. Boren, Esq., and Bruce Isaacs, Esq. on behalf of Defendants. The Court has reviewed the parties' briefs and supporting exhibits, and considered the oral arguments presented by counsel during the hearing. For good cause appearing, the reasons articulated by the Court during the hearing, as well as those set forth below, the Court DENIES both motions.

### BACKGROUND

Plaintiff and Defendants are business competitors. Both are in the business of educating and preparing individuals to enter the field of nursing. By way of this lawsuit, Plaintiff alleges Defendants copied, or directed the copying of, and used Plaintiffs copyright and trademark protected preparatory material as the primary medium for operating their businesses, without Plaintiff's authorization.

### DISCUSSION

On November 12, 2004, the Court issue an order setting case management dates, including deadlines for the parties to exchange expert designations and reports and to complete discovery. (Doc. 38). The deadline for parties to designate expert witnesses was February 4, 2005.[FN1] The parties were ordered to complete all discovery by May 6, 2005.

FN1. The parties were also required to exchange supplemental designations by February 18, 2005. The deadline for initial expert reports was March 11, 2005. Supplement reports were due by April 1, 2005.

Defendants now seek leave to designate an expert witness to testify regarding damages and testing in response to Plaintiff's designation of an expert for these issues. Defendants also want to propound interrogatories relating to damages sustained by Plaintiff. Defendants contend they should be excused from their failure to timely designate an expert and complete discovery because Mr. Frye was a *pro se* litigant at the time the deadlines passed. Defendants further contend the designation and interrogatories are necessary in order to give them a fair opportunity to rebut Plaintiff's damage expert and that Plaintiff would not be prejudiced by the Court granting their motions. citing *Potomac Elec. Power Co. v. Electric Motor Supply, Inc.,* 190 F.R.D. 372, 377 (D.Md.1999); citing also *U.S. v. Thompson,* 2005 U.S. Dist. LEXIS 8397 (E.D.Cal.2005).

### I. Mr. Frye's Prior Status as a Pro Se Litigant Does Not Establish Good Cause to Permit the Belated Expert Designation or Requested Discovery

In *Potomac,* the lead case upon which Defendants' arguments are predicated, the Maryland District Court permitted the plaintiff to belatedly designate an expert witness without a showing of good cause and even though the defendant was inconvenienced, because the testimony was important to at least one issue, the trial date had not yet been set, and the prejudice to the defendant (time and expense of additional discovery) was not such that the exclusion of the witness was warranted. *Potomac Elec. Power Co.,* 190 F.R.D. at 377.

**\*2** *Potomac,* however, is inconsistent with Federal Rules of Civil Procedure Rule 16(b) as well as legal authority in this circuit. Federal Rules of Civil Procedure Rule 16(b) specifically requires a showing of good cause to justify amendment to a scheduling order. It is not uncommon for courts in this Circuit to exclude expert testimony due to untimely disclosure when good cause does not exist. See *Quevedo v. Trans-Pacific Shipping,* 143 F.3d 1255, 1258 (9th Cir.1998) [The Ninth Circuit affirmed an order excluding expert testimony where a party missed the deadline for disclosing expert witnesses by 20 days and missed the expert report deadline by 6 weeks.] See also *Continental Laboratory Products v. MedAx Int'l,* 195 F.R.D. 675, 677 (S.D.Ca.2000), [Expert testimony was excluded where the Plaintiff's expert disclosure was untimely by 11 months, in part on the basis that untimely designation of experts is, in and of itself, prejudicial. (citing *Quevedo* ) ].

Defendants assert good cause exists here because Mr. Frye was a *pro se* litigant for a period of time and, therefore, did not comprehend the import of designating appropriate experts and conducting discovery regarding Plaintiff's alleged damages. The Court is not swayed.

First, although Mr. Frye represented himself for a period of time, the corporate Defendants, who jointly make these motions, have always been represented by counsel. The status of Mr. Frye's legal representation has no bearing on whether good cause exists so as to excuse these parties from their obligations under the scheduling order. Therefore, the motions are not well based as to these Defendants.

The Court also does not accept the proposition that Mr. Frye's prior status as a *pro se* litigant shows good cause so as to relieve him from his obligations to the Court and Plaintiff. As Mr. Frye was reminded by the Court on several occasions, a party proceeding in a case *pro se* is not exempt from compliance with orders or rules of the Court.

Furthermore, Defendants' claim that Mr. Frye did not understand the importance of designating an expert or conducting certain discovery is belied by the history of this case, as well as the Court's personal experience and observation of Mr. Frye, First, although Mr. Frye is not a lawyer by trade, he is not without legal training. In fact, Mr. Frye holds a law degree from Saratoga University. *Dec. of David Miranda, Esq., Ex. B (Transcript of deposition of Mr. Frye, p. 10-11).* Moreover, as the sole share-holder and proprietor of his co-Defendants, he has had opportunity to confer with and receive the advice of counsel on the corporate Defendants' behalf, even while electing to represent his own

legal interests in this case.

Since the inception of this case, the Court has presided over numerous discovery and case management disputes and settlement conferences. Just during the period of time when Mr. Frye was a *pro se* litigant, there were two Settlement Conferences, five filed motions by Mr. Frye and three by Plaintiff, a discovery conference, three motion hearings, and a hearing on an order to show case. In the Court's experience, Mr. Frye skillfully and craftily represented himself in all matters. He was efficient and effective and quite knowledgeable as the legal and factual issues at hand. Although Defendants profess that Mr. Frye was ignorant of the need to disclose an expert witness, the record indicates that at one point Mr. Frye actually disclosed an expert consultant, but later withdrew that disclosure. *Dec. of David Miranda, Esq., Ex. H & I* Later Mr. Frye cunningly and successfully opposed a motion to compel by Plaintiff in part on the basis the discovery propounded was untimely by a matter of three days pursuant to the Court's scheduling order. (Doc. 118). It is disingenuous for Mr Frye, therefore, who clearly had an understanding not only of the requirements of the Court's scheduling order, but also of the effect of a party's failure to meet its deadlines, to now argue his own failure to abide by the order should be excused. Thus, the Court finds, Mr. Frye's status as a pro se litigant for a period of time does not establish good cause to excuse him or his co-Defendants from compliance with the Court's scheduling order.

### II. Plaintiff Would Be Prejudiced by the Court's Granting of Defendants' Motions

**\*3** Despite Defendants' assertions to the contrary, Plaintiff would be significantly prejudiced by the Court permitting Defendants to reopen discovery at such a late date. The untimely designation of experts is, in and of itself, unfairly prejudicial. *Continental Laboratory Products,* 195 F.R.D. at 677. Federal Rule of Civil Procedure Rule 26 and the scheduling order are in place in order to facilitate the timely exchange of information in a manner that does not provide one party with an unfair advantage. *Johnson v. Mammoth Recreations,* 975 F.2d 604, 610 (9th Cir.1992). The parties' deadline to designate experts was over ten months ago. Reports were due nine months ago. The deadline for completion of discovery was in May 2005. Since these dates passed, Plaintiff has filed a motion for summary judgment, which is currently pending before the District Judge. Permitting Defendants to reopen discovery at such a late date could impede the timely disposition of Plaintiff's motion, causing considerable prejudice to Plaintiff and delay and disruption of the Court's calendar.

### CONCLUSION

Based on the foregoing, the Court finds Defendants have not established good cause to grant their motions. Therefore, both motions are DENIED.

S.D.Cal.,2005.
Excelsior College v. Frye
Slip Copy, 2005 WL 5994158 (S.D.Cal.)

Motions, Pleadings and Filings (Back to top)

• 2008 WL 4070681 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Reply in Support of Motion to Compel (Jul. 10, 2008) ᠍ Original Image of this Document (PDF)
• 2008 WL 4070680 (Trial Filing) Excelsior College's Report of the Status of Bankruptcy Proceeding (Jul. 1, 2008) ᠍ Original Image of this Document (PDF)
• 2008 WL 2528547 (Trial Motion, Memorandum and Affidavit) Declaration of David P. Miranda, Esq. In Support of Plaintiff Excelsior College's Motion to Compel Post-Judgment Discovery (May 20, 2008) ᠍ Original Image of this Document with Appendix (PDF)
• 2008 WL 2528546 (Trial Filing) Excelsior College's Report of the Status of Bankruptcy Proceeding (May 1, 2008) ᠍ Original Image of this Document (PDF)
• 2008 WL 2528545 (Trial Filing) Excelsior College's Final Report of the Status of Bankruptcy Proceeding (Mar. 3, 2008) ᠍ Original Image of this Document (PDF)

- 2008 WL 527208 (Trial Filing) Excelsior College's Report of the Status of Bankruptcy Proceeding (Jan. 3, 2008) 📼 Original Image of this Document (PDF)
- 2007 WL 5272136 (Trial Filing) Excelsior College's Report of the Status of Bankruptcy Proceeding (Nov. 27, 2007) 📼 Original Image of this Document (PDF)
- 2007 WL 5272135 (Trial Motion, Memorandum and Affidavit) Plaintiff/Appellee Excelsior College's Response to Defendant/Appellant Frye's Motion to Modify the Record (Aug. 2, 2007) 📼 Original Image of this Document (PDF)
- 2007 WL 5272134 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Points and Authorities In Response to Plaintiff's Opposition to Defendant Professional Development Systems School of Health Sciences' Motion for New Trial (May 7, 2007) 📼 Original Image of this Document (PDF)
- 2007 WL 5272133 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Opposition to Defendant Professional Development Systems School of Health Sciences' Motion for New Trial (Apr. 30, 2007) 📼 Original Image of this Document with Appendix (PDF)
- 2007 WL 5272132 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Motion for New Trial of Defendant Professional Development Systems School of Health Sciences (Apr. 5, 2007) 📼 Original Image of this Document (PDF)
- 2007 WL 5272129 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Responses to Defendant's Objections to Proposed Judgment (Mar. 19, 2007) 📼 Original Image of this Document with Appendix (PDF)
- 2007 WL 5272130 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Opposition to Defndant Frye's Motion for New Trial (Mar. 19, 2007) 📼 Original Image of this Document with Appendix (PDF)
- 2007 WL 5272131 (Trial Motion, Memorandum and Affidavit) Opposition to Defendants' Motion to Reduce Damage Award and for Other Relief (Mar. 19, 2007) 📼 Original Image of this Document (PDF)
- 2007 WL 5272128 (Trial Motion, Memorandum and Affidavit) Opposition to Defendant Charles M. Frye's Ex Parte Request to Sign the Proof of Service on all Documents Filed Directly with this Court (Mar. 15, 2007) 📼 Original Image of this Document (PDF)
- 2007 WL 906088 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Response to Show Cause Order (Feb. 27, 2007)
- 2007 WL 5272127 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities In Support of Motion for Entry of Separate Final Judgment Under Fed.r.civ.p. 54(b) Against Defendants, West Haven University and Professional Development Systems School of Health Sciences (Jan. 19, 2007) 📼 Original Image of this Document (PDF)
- 2006 WL 5845993 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Responses to Defendants' Objections to Proposed Judgment (Dec. 27, 2006) 📼 Original Image of this Document (PDF)
- 2006 WL 5845992 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Reply In Support of Motion to Include West Haven Univerity as a Judgment-Debtor (Dec. 21, 2006) 📼 Original Image of this Document (PDF)
- 2006 WL 5845991 (Trial Motion, Memorandum and Affidavit) Defendant West Haven University's Memorandum of Points and Authorities In Opposition to Plaintiff's Motion to Include Said Defendant As a Judgment-debtor. (Dec. 13, 2006) 📼 Original Image of this Document (PDF)
- 2006 WL 5845990 (Trial Motion, Memorandum and Affidavit) Excelsior College's Memorandum of Points and Authorities In Opposition to Defendant Frye's Request to Extend Bankruptcy Stay to Co-defendants Pds and Whu (Dec. 8, 2006) 📼 Original Image of this Document (PDF)
- 2006 WL 5845989 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Plaintiff's Motion to Include the Corporate Defendant, West Haven University, Inc. a a Judgment-Debtor (Nov. 28, 2006) 📼 Original Image of this Document (PDF)
- 2006 WL 3932887 (Verdict and Settlement Summary) (Nov. 14, 2006)
- 2006 WL 5893281 (Jury Instruction) Jury Instructions (Nov. 14, 2006) 📼 Original Image of this Document (PDF)
- 2006 WL 5845988 (Trial Motion, Memorandum and Affidavit) Excelsior College's Memoradum of Points and Authorities In Support of Its Request that the Fair Use Instruction Not be Submitted to the

Jury (Nov. 8, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845987 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief Regarding Admitting Plaintiff's Exhibit 75 As Noncumulative, Relevant Evidence (Nov. 6, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845986 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief Regarding Defendants' Intent to Submit Proof of Judgment Obtained In Utah Action (Nov. 2, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845985 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Memorandum of Points and Authorities In Support of Motion for Reconsideration of Motion In Limine Number 258, Exhibit O1 (Oct. 28, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845984 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Objections to Defendants' Verdict Form (Oct. 18, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845983 (Jury Instruction) Plaintiff Excelsior College's Objections to Defendants' Supplemental Jury Instructions (Oct. 16, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845981 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Trial Brief (Oct. 13, 2006) 📠 Original Image of this Document with Appendix (PDF)
- 2006 WL 5845977 (Jury Instruction) Plaintiff Excelsior College's Supplemental Propsed Jury Instructions (Clean Copy) (Oct. 11, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845982 (Jury Instruction) Plaintiff Excelsior College's Supplemental Jury Instructions (With Authorities) (Oct. 11, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845971 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Memorandum of Points and Authorities In Opposition to Defendants Frye and Pds Motion In Limine to Exclude Expert Testimony Regarding Similarity of Plaintiff's and Defendants' Works (Oct. 6, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845972 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Memorandum of Points and Authorities In Opposition to Defendant Frye's Motion In Limine (Oct. 6, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845973 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Memorandum of Points and Authorities In Opposition to Defendants' Motion In Limine (Oct. 6, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845974 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Memorandum of Points and Authorities In Opposition to Defendant Frye's Motion In Limine to Exclude Extraneous Examination Questions and Answers of Unknown Origin Including but Not Limited to One Used By Plaintiff In Depo sitions of Charles Frye and Steven Behunin and Strike Steven Behunin from Plaintiff's Witness List (Oct. 6, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845975 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Memorandum of Points and Authorities In Opposition to Defendant Frye's Motion In Limine (Oct. 6, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845976 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Memorandum of Points and Authorities In Opposition to Defendants' Motion in Limine (Oct. 6, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845978 (Jury Instruction) Joint Proposed Jury Instructions (With Authorities) (Oct. 6, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845979 (Jury Instruction) Joint Proposed Jury Instructions (Clean Copy) (Oct. 6, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845980 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Points and Authorities In Opposition to Plaintiff's Motion In Limine to Preclude Exhibits Defendants Allegedly Never Produced or Untimely Produced (Oct. 6, 2006) 📠 Original Image of this Document (PDF)
- 2006 WL 5845970 (Trial Motion, Memorandum and Affidavit) Memoradum of Points and Authority In Support of Defendants' Motion In Limine to Preclude Defendant's Metatags, Keywords, and Source Codes. (Sep. 25, 2006) 📠 Original Image of this Document with Appendix (PDF)
- 2006 WL 5845962 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities In Support of Excelsior College's Motion In Limine to Exclude Evidence Not Relevant to Any Remaining Claims or Defenses (Sep. 22, 2006) 📠 Original Image of this Document (PDF)

• 2006 WL 5845963 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities In Support of Plaintiff's Motion In Limine to Preclude the Testimony of Charles W. Frye (Sep. 22, 2006) 📄 Original Image of this Document (PDF)

• 2006 WL 5845964 (Trial Motion, Memorandum and Affidavit) Memorandum In Support of Plaintiff's Motion In Limine to Preclude Evidence, Reference, Argument and Testimony Relating to Materials Defendants Failed to Produce or Identify During Discovery Concerning the Alleged Sources of Defendants' Test Questions (Sep. 22, 2006) 📄 Original Image of this Document (PDF)

• 2006 WL 5845965 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities In Support of Plaintiff's Motion In Limine to Preclude Exhibits Defendants Never Produced or Untimely Produced (Sep. 22, 2006) 📄 Original Image of this Document (PDF)

• 2006 WL 5845966 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Excelsior College's Motion in Limine to Exclude the Testimony of Lawrence M. Golda, Ma (Sep. 22, 2006) 📄 Original Image of this Document (PDF)

• 2006 WL 5845967 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities In Support of Plaintiff's Motion In Limine to Preclude Cumulative Testimony (Sep. 22, 2006) 📄 Original Image of this Document (PDF)

• 2006 WL 5845968 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Plaitiff's Motion in Limine to Preclude Defendants from Offering any Evidence, Argument or Testimony Regardin Offsets and Deductions from Defendats Gross Revenues (Sep. 22, 2006) 📄 Original Image of this Document (PDF)

• 2006 WL 5845969 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Excelsior College's Motion in Limine Related to Affirmative Defenses Struck On Summary Adjudication (Sep. 22, 2006) 📄 Original Image of this Document (PDF)

• 2006 WL 5845961 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Points and Authorities of Defendant Charles M. Frye In Support of His Motion for Reconsideration (Jul. 28, 2006) 📄 Original Image of this Document (PDF)

• 2006 WL 5845960 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities In Opposition to Defendant Frye's Notice to the Court of Intentional Deception (Jul. 21, 2006) 📄 Original Image of this Document with Appendix (PDF)

• 2006 WL 5845959 (Trial Motion, Memorandum and Affidavit) Declartion of Charles M. Frye in Support of his Motion for Reconsideration of the Court's May 8,2006 Ruling Upon his Motion for Summary Judgment as to Counts XI and XII (Jun. 6, 2006) 📄 Original Image of this Document (PDF)

• 2006 WL 5845958 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Reply Memorandum of Points and Authorities In Support of Motion to Compel Production of All Insurance Agreements (Feb. 6, 2006) 📄 Original Image of this Document (PDF)

• 2006 WL 5845957 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Plaintiff Excelior College's Motion to Compel Defendants to Produce all Insurance Agreements (Jan. 30, 2006) 📄 Original Image of this Document with Appendix (PDF)

• 2005 WL 5981782 (Trial Motion, Memorandum and Affidavit) Defendants Charles Frye and West Haven University's Opposition to Plaintiff Excelsior College's Notion for Partial Summary Judgment As to the Content Guides Judgment As to Defendants' Issue and a to Defendants' Affirmative Defenses in Connection Ther ewith (Dec. 2, 2005)

• 2005 WL 5981783 (Trial Motion, Memorandum and Affidavit) Reply Declaration of William M. Stewart in Support of Excelsior College's Motion for Partial Summary Judgment (Dec. 2, 2005)

• 2005 WL 5981799 (Trial Motion, Memorandum and Affidavit) Defendant West Have University, Inc.'s Reply Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment or, in the Alternative, Motion for Summary Adjudication as to Claim Nos. 1-12 (Dec. 2, 2005)

• 2005 WL 5981800 (Trial Motion, Memorandum and Affidavit) Defendant Charles M. Frye's Reply Memorandum of Points and Authorities in Support of His Motion for Partial Summary Judgment as to Claim Nos. 5 and 7-12 (Dec. 2, 2005)

• 2005 WL 5981801 (Trial Motion, Memorandum and Affidavit) Defendant Professional Development Systems School of Health Sciences' Reply Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment as to Claim Nos. 1 - 3, 5 and 7 -12 (Dec. 2, 2005)

• 2005 WL 5981802 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's

Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment (Dec. 2, 2005)

• 2005 WL 5981803 (Trial Motion, Memorandum and Affidavit) Objections to Declaration of William M. Stewart (Dec. 2, 2005)

• 2005 WL 6156005 (Trial Motion, Memorandum and Affidavit) Declaration of William M. Stewart In Support of Motion for Partial Summary Judgment (Dec. 2, 2005) 🖨 Original Image of this Document with Appendix (PDF)

• 2005 WL 6156006 (Trial Motion, Memorandum and Affidavit) Declaration of David P. Miranda, Esq. In Support of Excelsior's Motion for Partial Summary Judgment (Dec. 2, 2005) 🖨 Original Image of this Document with Appendix (PDF)

• 2005 WL 6156007 (Trial Motion, Memorandum and Affidavit) Declaration of Charles Frye In Opposition to Plaintiff Excelsior College's Motion for Partial Summary Judgment As to the Content Guides Issue and As to Defendants' Affirmative Defenses In Connection Therewith (Dec. 2, 2005) 🖨 Original Image of this Document with Appendix (PDF)

• 2005 WL 6156008 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Reply Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment (Dec. 2, 2005) 🖨 Original Image of this Document with Appendix (PDF)

• 2005 WL 5981796 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Memorandum of Points and Authorities in Opposition to Defendant Frye's Motion for Partial Summary Judgment (Nov. 23, 2005)

• 2005 WL 5981797 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Memorandum of Points and Authorities in Opposition to Defendant Pds's Motion for Summary Judgment or, in the Alternative Partial Summary Judgment (Nov. 23, 2005)

• 2005 WL 5981798 (Trial Motion, Memorandum and Affidavit) Declaration of William M. Stewart in Support of Excelsior College's Opposition to Motions for Summary Judgment of Defendants Frye, Professional Development Systems and West Haven University (Nov. 23, 2005)

• 2005 WL 6156004 (Trial Motion, Memorandum and Affidavit) Declaration of David P. Miranda, Esq. in Support of Excelsior College's Opposition to Motions for Summary Judgment of Defendants Frye, Professional Development Systems and West Haven University (Nov. 23, 2005) 🖨 Original Image of this Document with Appendix (PDF)

• 2005 WL 5981792 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities of Defendant Charles M. Frye's Motion for Partial Summary Judgment as to Claim Nos. 5 and 7-12; and Declaration of Charles M. Frye in Support Thereof (Oct. 7, 2005)

• 2005 WL 5981793 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities of Defendant Professional Development Systems School of Health Sciences' Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment as to Claim Nos. 1, 2, 3, 5, and 7 - 12; and Declara tion of Charles M. Frye in support Thereof (Oct. 7, 2005)

• 2005 WL 5981794 (Trial Motion, Memorandum and Affidavit) Memorandum of Points an Authorities of Defendant West Haven's Notice of Motion for Summary Judgment or, in the Alternative, Motion for Partial Summary Judgment As to Claim Nos. 1 - 12; and Declaration of Charles M. Frye in Support Thereof (Oct. 7, 2005)

• 2005 WL 5981795 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Memorandum in Reply in Support of Motion to Freeze Defendants' Assets (Oct. 7, 2005)

• 2005 WL 5981791 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities of Defendants in Opposition to Plaintiff's Motion to Freeze Defendants' Assets; Declaration of Charles M. Frye (Sep. 30, 2005)

• 2005 WL 5981789 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Memorandum of Points and Authorities in Support of Motion to Freeze Defendants' Assets (Aug. 15, 2005)

• 2005 WL 5981790 (Trial Motion, Memorandum and Affidavit) Declaration of David P. Miranda, Esq. in Support of Excelsior College's Motion to Freeze Defendants' Assets (Aug. 15, 2005)

• 2005 WL 5981788 (Trial Motion, Memorandum and Affidavit) Response of Defendants to Plaintiff's Summary of Discovery Sought in Motion to Compel (Jun. 23, 2005)

• 2005 WL 5981814 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Reply Memorandum of Points and Authorities (Jun. 3, 2005)

• 2005 WL 5981815 (Trial Motion, Memorandum and Affidavit) Defendant Charles M. Frye's Reply Memorandum of Points and Authorities to Plaintiff's Opposition to Defendant's Motion for Clarification

(Jun. 3, 2005)
• 2005 WL 5981811 (Trial Motion, Memorandum and Affidavit) Excelsior College's Memorandum of Points and Authorities in Opposition to Defendant Frye's Motion for Clarification (May 27, 2005)
• 2005 WL 5981812 (Trial Motion, Memorandum and Affidavit) Declaration of William M. Stewart in Opposition to Defendant Frye's Motion for Clarification and Modification (May 27, 2005)
• 2005 WL 5981813 (Trial Motion, Memorandum and Affidavit) Declaration of David P. Miranda, Esq. in Opposition to Defendant Frye's Motion for Clarification and Modification (May 27, 2005)
• 2005 WL 5981809 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Compel Discovery (May 26, 2005)
• 2005 WL 5981810 (Trial Motion, Memorandum and Affidavit) Declaration of Charles M. Frye in Support of Defendants' Opposition to Plaintiff's Motion to Compel Discovery (May 26, 2005)
• 2005 WL 5981807 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Plaintiff Excelsior College's Motion to Compel Discovery (May 20, 2005)
• 2005 WL 5981806 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Plaintiff Excelsior College's Motion to Compel Discovery (May 19, 2005)
• 2005 WL 5981808 (Trial Motion, Memorandum and Affidavit) Declaration of David P. Miranda, Esq. in Support of Plaintiff Excelsior College's Motion to Compel Discovery (May 19, 2005)
• 2005 WL 5980440 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendant's Motion for Clarification and Modification of Preliminary Injunction Order (May 3, 2005)
• 2005 WL 5980441 (Trial Motion, Memorandum and Affidavit) Defendant Charles M. Frye's Declaration In Support of Motion for Clarification and Modification of Preliminary Injunction Order (May 3, 2005)
• 2005 WL 5980439 (Trial Motion, Memorandum and Affidavit) (Apr. 19, 2005)
• 2005 WL 5980437 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Defendant's Motion to Compel Discovery; Motion to Take Deposition of David P. Miranda, Esq.; And Motion to Re-Examine Stephen Behunin (Apr. 15, 2005)
• 2005 WL 5980438 (Trial Motion, Memorandum and Affidavit) Declaration of Charles M. Frye in Support of Motion to Compel Discovery; Motion to Take Deposition of David P. Miranda, Esq.; and Motion to Re-Examine Stephen Behunin (Apr. 15, 2005)
• 2005 WL 5980436 (Trial Pleading) Defendant Charles M. Frye's First Amended Answer to First Amended Complaint of Excelsior College (Apr. 6, 2005)
• 2005 WL 5713675 (Expert Report and Affidavit) Expert Witness Report of Margery Gott Garbin, PhD., Rn on Behalf of Plaintiff Excelsior College (Mar. 11, 2005)
• 2005 WL 5980432 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of Charles M. Frye's Opposition to Excelsior College's Motion for Preliminary Injunction (Feb. 15, 2005)
• 2005 WL 5980434 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Objection to Defendant West Haven's Opposition to Excelsior College's Motion for Preliminary Injunction (Feb. 14, 2005)
• 2005 WL 5980435 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Objection to Defendant Charles M. Frye's Opposition to Excelsior College's Motion for Preliminary Injunction (Feb. 14, 2005)
• 2005 WL 5980430 (Trial Motion, Memorandum and Affidavit) West Haven University', Inc.'s Memorandum of Points and Authorities in Opposition to Excelsior College's Motion for Preliminary Injunction (Feb. 11, 2005)
• 2005 WL 5980433 (Trial Motion, Memorandum and Affidavit) Defendant Charles M. Frye's Declaration in Opposition to Excelsior College's Motion for Preliminary Injunction (Feb. 10, 2005)
• 2005 WL 5980429 (Trial Motion, Memorandum and Affidavit) West Haven University's Opposition to Excelsior College's Motion for Preliminary Injunction (Feb. 9, 2005)
• 2005 WL 5980431 (Trial Motion, Memorandum and Affidavit) Declaration of Charles M. Frye in Support of West Haven University's Opposition to Excelsior College's Motion for Preliminary Injunction (Feb. 9, 2005)
• 2005 WL 5980425 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction (Jan. 13, 2005)
• 2005 WL 5980426 (Trial Motion, Memorandum and Affidavit) Declaration of William M. Stewart in Support of Motion for Preliminary Injunction (Jan. 13, 2005)
• 2005 WL 5980427 (Trial Motion, Memorandum and Affidavit) Declaration of J. Patrick Jones, Ph.D.

(Jan. 13, 2005)
• 2005 WL 5980428 (Trial Motion, Memorandum and Affidavit) Declaration of David P. Miranda, Esq. in Support of Excelsior College's Motion for Preliminary Injunction (Jan. 13, 2005)
• 2004 WL 5496051 (Trial Motion, Memorandum and Affidavit) Defendants Professional Development Systems School of Health Scienses and West Haven University Response to Order to Show Cause (Dec. 30, 2004)
• 2004 WL 5496050 (Trial Motion, Memorandum and Affidavit) Defendant Charles M. Frye's Declaration in Opposition to Award of Sanctions (Dec. 1, 2004)
• 2004 WL 5496049 (Trial Motion, Memorandum and Affidavit) Declaration of David P. Miranda, Esq. in Support of Award of Sanctions (Nov. 16, 2004)
• 2004 WL 5496047 (Trial Motion, Memorandum and Affidavit) Defendant Charles M. Frye's Points and Authority in Opposition to Plaintiff Excelsior College's Cross Motions for Sanctions and Protective Order Against Defendant Frye (Oct. 15, 2004)
• 2004 WL 5496044 (Trial Motion, Memorandum and Affidavit) Defendants Professional Development Ssystems School of Health Sciences and West Haven University's Points and Authority in Opposition to Plaintiff Excelsior College's Cross Motion for a Protective Order Against Defendants (Oct. 12, 2004)
• 2004 WL 5496045 (Trial Motion, Memorandum and Affidavit) Declaration of John P. Bruno, Esq. in Opposition to Plaintiff Excelsior College' Cross Motion for Protective Order Against Defendants (Oct. 12, 2004)
• 2004 WL 5496046 (Trial Motion, Memorandum and Affidavit) Defendant Charles M. Frye's Opposition to Plaintiff Excelsior College's Cross Motion for Protective Order Against Defendants (Oct. 12, 2004)
• 2004 WL 2546034 (Trial Motion, Memorandum and Affidavit) Plaintiff Excelsior College's Points and Authorities in Opposition to Defendant Frye's Motion and in Support of Excelsior College's Cross Motion (Sep. 28, 2004) Original Image of this Document (PDF)
• 2004 WL 5496043 (Trial Motion, Memorandum and Affidavit) Declaration of William M. Stewart (Sep. 28, 2004)
• 2004 WL 5496052 (Trial Motion, Memorandum and Affidavit) Declaration of David P. Miranda, Esq. in Opposition to Defendants' Frye's Motion and in Support of Plaintiff Excelsior College's Cross Motion (Sep. 28, 2004)
• 2004 WL 5496048 (Trial Pleading) Answer of Defendants Charles M. Frye, Professional Development Systems School of Health Sciences and West University (May 10, 2004)
• 2004 WL 2546027 (Trial Pleading) First Amended Complaint (Mar. 30, 2004) Original Image of this Document with Appendix (PDF)
• 2004 WL 5496350 (Trial Pleading) Complaint (Mar. 11, 2004)
• 3:04cv00535 (Docket) (Mar. 11, 2004)
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 2:** *Justin v. City and County of San Francisco,* **2008 WL 544466 (N.D. Cal. 1994).**

Slip Copy, 2008 WL 544466 (N.D.Cal.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.
United States District Court,
N.D. California.
Lisa Monique JUSTIN, individually, as successor to Andre Maurice Brown, et al., Plaintiff(s),
v.
CITY AND COUNTY OF SAN FRANCISCO, et al., Defendant(s).
No. C 05-4812 MEJ.
Feb. 26, 2008.

Matthew William Kumin, Law Offices of Matthew Kumin, Randall Gary Knox, Attorney at Law, San Francisco, CA, for Plaintiffs.

Blake Philip Loebs, Kimberly Bliss, City Attorney's Office, San Francisco, CA, for Defendants.

**ORDER DENYING PLAINTIFFS' MOTION FOR RELIEF FROM PRETRIAL SCHEDULING ORDER**

**ORDER SCHEDULING HEARING RE: DEFENDANTS' SUMMARY JUDGMENT MOTION**

MARIA-ELENA JAMES, United States Magistrate Judge.

### INTRODUCTION

*\*1* Before the Court is Plaintiffs' Motion for Relief from Pretrial Scheduling Order and to Reopen Discovery. (Doc. # 40.) In their motion, Plaintiffs request additional time to respond to Defendants' summary judgment motion, file a motion for leave to file an amended complaint, designate experts, and complete discovery. For the following reasons, the Court **DENIES** Plaintiffs' motion.

### BACKGROUND

Given the nature of Plaintiffs' request, the Court finds a review of the procedural background in this matter appropriate. On November 23, 2005, Plaintiffs filed a complaint under 42 U.S.C. § 1983, as well as state law causes of action, based on the death of Andre Maurice Brown during an apparent arrest attempt by the San Francisco Police Department. On June 16, 2006, the parties submitted a Joint Case Management Statement, in which Defendants identified the names of the officers and paramedics who were involved in the incident, and what role they played in the incident. (Doc. # 10.) After review of the parties' statement, the Court issued a Case Management Order which set the following pertinent deadlines:

| | |
|---|---|
| Fact Discovery Cut-off | February 23, 2007 |
| Expert Disclosure | February 23, 2007 |
| Rebuttal Experts | March 9, 2007 |
| Summary Judgment filing deadline | March 22, 2007 |
| Expert Discovery Cut-off | April 26, 2007 |
| Trial | August 27, 2007 |

On September 14, 2006, Plaintiffs associated attorney Matt Kumin into the case. (Doc. # 12.)

During the eight-month discovery period in this case, Plaintiffs served a single set of written discovery requests-for documents-to which Defendants served objections and responses on January 10, 2007. (Bliss Decl. ¶ 2.) The responsive documents included a copy of the police report, which identified the names of the officers and paramedics involved in the incident. (Bliss Decl. ¶ 2.)

On February 12, 2007, the parties participated in a settlement conference before the Honorable Wayne D. Brazil, at which time the case did not settle.

On February 13, 2007, Plaintiffs served notices for the depositions of ten San Francisco City employees (including officers, paramedics, and the medical examiner), all of which were noticed to take place on February 23, 2007 at 10:00 a.m. (Bliss Decl. ¶ 3.) Defendants objected to the depositions, and Plaintiffs took the depositions off calendar. In Defendants' confirming letter to Plaintiffs' counsel, Defendants noted that if the Plaintiffs desired the depositions to go forward, they would have to make "an appropriate motion for a continuance of the discovery cut-off [deadline] with the Court." (Bliss Decl. ¶ 3 & Ex. A.)

On February 23, 2007, Defendants made their expert disclosures. (Bliss Decl. ¶ 4.) Plaintiffs did not disclose any experts. (Bliss Decl. ¶ 4.)

On March 5, 2007, the parties filed two joint letters with the Court regarding discovery disputes based on Plaintiffs' failure to provide interrogatory responses and depositions. (Doc.15, 16.) On March 7, the Court ordered Plaintiffs to answer Defendants' outstanding written interrogatories within thirty days and to submit to depositions within thirty days of conclusion of a trial in the San Francisco Superior Court to which Randall Knox, Plaintiffs' counsel, was assigned. (Doc.17, 18.) To date, Plaintiffs have not provided responses to the interrogatories or submitted to depositions. (Bliss Decl. ¶ 5.)

**\*2** Based on Mr. Knox's participation in the superior court trial, the Court also asked the parties to indicate whether the dispositive motion cut-off date, pretrial dates, and trial date would need to be moved. (Doc. # 19.) Based on the parties' response, the Court granted a continuance of nearly six months and established the following revised schedule:

Summary Judgment Filing Deadline:    September 13, 2007
Opposition Deadline                 September 27, 2007
Trial                               February 19, 2008

(Doc. # 22.) The parties' status report indicated that the continuance was necessary because Mr. Knox would be "solely responsible" for opposing Defendants' anticipated summary judgment motion. (Doc. # 20.) Further, as the discovery and expert deadlines had already passed, and neither party requested a continuance of these dates, the Court did not continue the discovery and expert deadlines.

On September 12, 2007, Plaintiffs dismissed Sonya Justin, Lynette Richie, and Kimberly Justin based on their lack of standing, and dismissed Lisa Monique Justin in her individual capacity. (Doc. # 25.)

On September 13, 2007, Defendants filed their currently-pending summary judgment motion. (Doc. # 31.) Although Plaintiffs' opposition was due on September 27, 2007, they failed to file an opposition or request for continuance. Accordingly, the Court issued an Order to Show Cause on October 3, 2007, and vacated the hearing on Defendants' summary judgment motion. (Doc. # 33.) Mr. Knox filed a response to the OSC on October 11, 2007, and requested thirty additional days to find additional counsel to assist in opposing the pending motion. (Doc. # 34.) In his response, Mr. Knox stated that Matt Kumin had advised him that he "would no longer participate in the case." (Doc. # 34, ¶ 4.) In response, the Court vacated the OSC and continued the deadline for filing an opposition to November 15, 2007. (Doc. # 35.)

On November 26, 2007, based on Plaintiffs failure to file an opposition or request for continuance

in compliance with the November 15, 2007 Order, the Court vacated all pending pretrial and trial dates, and granted Plaintiffs a "final opportunity to file an opposition." (Doc. # 36.) Plaintiffs' opposition was due on December 13, 2007. ( *Id.*) In its order, the Court noted the following: "As this is the third opportunity to file an opposition, any failure to comply with this deadline shall result in dismissal of this case for failure to prosecute, pursuant to Federal Rule of Civil Procedure 41." ( *Id.*)

On December 13, 2007, rather than filing an opposition, Plaintiffs filed the instant motion seeking an extension of all the deadlines in this case, including those that have already expired. Defendants filed an opposition on December 28, 2007. Plaintiffs filed no reply.

On February 25, 2008, the Court held a hearing on the matter. Randall Knox appeared on behalf of Plaintiffs. Kimberly Bliss appeared on behalf of Defendants.

## DISCUSSION

**\*3** Pursuant to Federal Rule of Civil Procedure ("Rule") 16, "[a] schedule shall not be modified except upon a showing of good cause." Fed.R.Civ.P. 16(b). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)' s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' " *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992) (citing Fed.R.Civ.P. 16 advisory committee's notes (1983 amendment)). "Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* (citations omitted). Although the primary focus is upon the moving party's reasons for seeking modification, the Court may also consider the existence or degree of prejudice to the party opposing the modification. *Id.* (citations omitted). In summary, "[i]f the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should not be granted. *Zivkovic v. Southern California Edison Co.,* 302 F.3d 1080, 1087 (9th Cir.2002) (citing *Johnson,* 975 F.2d at 609)).

## A. Plaintiffs Have Not Established Good Cause To Extend The Discovery Deadline
Under Rule 16's standard, the Court finds that Plaintiffs have not established good cause for an extension of the discovery deadline. During the eight-month discovery period in this case, Plaintiffs served a single set of written discovery requests-for documents-to which Defendants served objections and responses on January 10, 2007. (Bliss Decl. ¶ 2.) Moreover, Plaintiffs did not serve any deposition notices until the last possible day, and then tried to notice the depositions of ten separate defendant employees on the day of the discovery cut-off. (Bliss Decl. ¶ 3.) Plaintiffs also failed to disclose any experts.

In addition, Plaintiffs failed to provide Defendants with discovery, despite Court orders requiring them to do so. On March 5, 2007, the parties filed two joint letters regarding discovery disputes based on Plaintiffs' failure to provide interrogatory responses and depositions. (Doc.15, 16.) On March 7, the Court ordered Plaintiffs to answer Defendants' outstanding requests, (Doc.17, 18), yet Plaintiffs failed to comply with these orders. (Bliss Decl. ¶ 5.)

Plaintiffs' counsel indicates that this lack of diligence is due to his participation in a trial in San Francisco Superior Court during March and April 2007. However, this explanation fails to justify Plaintiffs' lack of diligence between December 2005, when this case was filed, and February 2007, when the superior court trial began. By Mr. Knox's own admission, that matter was dismissed on June 19, 2007. (Doc. # 40 at 11:3-4.) Mr. Knox's conclusory assertion that he had "additional criminal trials and hearings between July and November 2007," (Doc. # 40 at 11:6-7), is not only insufficient to establish good cause, but also seems to ignore the calendars of this Court and defense counsel. Moreover, during this same time period, Plaintiffs' counsel was able to participate in this case by dismissing several individual plaintiffs and reviewing and submitting a Joint Statement of Undisputed Facts. (Doc.25, 28.) There is no explanation why Plaintiffs' counsel could not have also filed the instant motion between June and December 2007.

*4* The Court also notes that Matt Kumin, who, according to Mr. Knox, is "a lawyer with extensive experience in police cases, including those alleging wrongful death," (Doc. # 40 at 10:4-6), has been counsel of record for Plaintiffs from September 2006 to the present. Although Mr. Knox states that he "believes" Mr. Kumin filed a formal withdrawal from the case, no such withdrawal exists. Moreover, while Mr. Knox states that he was looking for another attorney to assist him on this case, he failed to seek timely extensions of the deadlines provided by the Court's scheduling orders. Despite Mr. Knox's "limited experience" in civil litigation, the Court is unaware of any cases in which counsel's inexperience was deemed good cause for failing to diligently conduct discovery or comply with court-ordered scheduling deadlines.

Finally, Plaintiffs have known since February of 2007-if not before-that they would need to seek an extension of the discovery deadline. On February 20, 2007, Defendants noted in correspondence that if the Plaintiffs desired to conduct depositions, they would have to make "an appropriate motion for a continuance of the discovery cut-off [deadline] with the Court." (Bliss Decl. ¶ 3 & Ex. A.) Thus, Plaintiffs have known, at a minimum, for almost one year of their need to seek the Court's permission to extend the discovery cut-off. *See, e.g., Pembroke v. City of San Rafael,* 1994 WL 443683, at *3 (N.D.Cal.) (delay of five months in seeking modification of deadline under scheduling order did not establish diligence).

Based on this analysis, good cause does not exist to grant an extension of discovery.

## B. Plaintiffs Have Not Established Good Cause To Extend The Expert Designation Deadline

The Court also finds that Plaintiffs have not established good cause for a continuance of the expert designation deadline. On February 23, 2007, Defendants timely made their expert disclosures. Plaintiffs did not disclose any experts, nor did they seek the Court's permission for an extension of the expert designation deadline. Indeed, on March 12, 2007, the parties filed a joint stipulation seeking an extension of the dispositive motion, pretrial, and trial dates. (Doc.20, 21.) The parties did not, however, request a continuance of the discovery or expert deadlines. For the same reasons as those stated above, the Court finds that Plaintiffs' current motion comes as a result of counsel's lack of diligence. Accordingly, good cause does not exist to grant an extension of the expert designation deadline.

## C. Plaintiffs' Desire To Amend The Complaint

Mr. Knox indicates that counsel has drafted an amended complaint and a motion for leave to file an amended complaint. As part of the instant motion, Plaintiffs base their request for a continuance of the various case deadlines on their desire to amend the complaint to name the unidentified individual defendants. Under Rule 15(a), leave to amend is normally granted as a matter of course; after that point, leave to amend is generally granted "unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay." *Johnson,* 975 F.2d at 608. "Although delay alone does not justify denial of leave to amend, undue delay plus prejudice to the opposing party may justify denial of leave to amend." *Pembroke,* 1994 WL 443683, at *1. Moreover, in cases in which there is a pending summary judgment motion, leave to amend may be denied where the plaintiff has not made a "substantial showing" to support the amendment. *See, e.g., Oncology Therapeutics Network Connection v. Virginia Hematology Oncology PLLC,* 2006 WL 334532, at *13 (N.D.Cal.); *see also Maldonado v. City of Oakland,* 2002 WL 826801, at *4 (N.D.Cal.) (citing Schwarzer, Tashima & Wagstaffe, Federal Civil Procedure Before Trial, § 8:420.1 (2002 ed.)). Further, in cases involving a motion filed after a filing cut-off date established in a scheduling order, courts generally require a plaintiff to meet the higher standard of "good cause" under Rule 16, with its focus on diligence. *See, e.g., Hannon v. Chater,* 887 F.Supp. 1305, 1319 (N.D.Cal.1995) ("Once the district court has issued a pretrial scheduling order establishing an order for pretrial motions, Rule 16, not Rule 15, controls the amendment of pleadings.").

*5* Here, the combined undue delay and prejudice to Defendants necessitates denial of leave to amend. Plaintiffs have known from the day of the incident that individual officers and paramedics were involved in the incident, but they made no attempt to identify them prior to filing the complaint.

Mr. Knox argues that his is not a "civil rights" lawyer, but he does not deny Defendants' claim that he is an experienced and well-regarded criminal defense attorney. It is unclear how a criminal defense attorney would be unfamiliar with the fact that he could have obtained a copy of the publicly-available police report and learned the identities of the officers involved in the incident even before initiating litigation.[FN1]

> FN1. Indeed, as Defendants point out, the SFPD website provides instructions and a form for doing so: http://www.sfgov.org/site/police_ index.asp?id=20212# copy.


Further, Plaintiffs have not been diligent in seeking to amend the complaint, waiting until more than two years after the filing of the initial complaint, more than eighteen months after initial disclosures and the parties' Joint Case Management Statement disclosed the names of the officers and paramedics involved in the incident, more than ten months after they were provided with a copy of the police report (which they could have obtained before filing suit), and more than three months after the dispositive motion cut-off and Defendants' filing of a summary judgment motion. Given this amount of time, Plaintiffs were clearly not diligent. *See, e.g., Roberts v. Arizona Bd. of Regents,* 661 F.2d 796, 798 (9th Cir.1981) (affirming denial of motion to amend raised "after discovery was virtually complete and the [defendant's] motion for summary judgment was pending before the court"). As discussed above, Mr. Knox's stated inexperience and his participation in another trial in state court do not establish good cause for this lack of diligence.

### CONCLUSION

Based on this analysis, the Court DENIES Plaintiffs' motion. As Defendants' summary judgment motion remains pending, the Court ORDERS Plaintiffs to file any opposition by March 20, 2008. Defendants shall file any reply by April 3, 2008, and the Court shall conduct a hearing on April 24, 2008 at 10:00 a.m. in Courtroom B, 15th Floor, 450 Golden Gate Avenue, San Francisco, California.

**IT IS SO ORDERED.**

N.D.Cal.,2008.
Justin v. City and County of San Francisco
Slip Copy, 2008 WL 544466 (N.D.Cal.)


Motions, Pleadings and Filings (Back to top)

• 2006 WL 1417462 (Trial Pleading) Answer to Complaint of Defendant City and County of San Francisco, San Francisco Police Chief Heather Fong (in Her Official Capacity Only) and San Francisco Fire Chief Joanne Hayes-White (in Her Official Capacity Only (Apr. 11, 2006) Original Image of this Document (PDF)
• 3:05cv04812 (Docket) (Nov. 23, 2005)
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1
2
3
4
5
6       **Exhibit 3:** *Nat. Railroad Corp. v. Expresstrak LLC*, 2006 WL 2711533 (D.D.C. 2006).
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Slip Copy, 2006 WL 2711533 (D.D.C.)

Only the Westlaw citation is currently available.

United States District Court,
District of Columbia.
NATIONAL RAILROAD PASSENGER CORPORATION, Plaintiff,
v.
EXPRESSTRAK, L.L.C., Defendant.
Civil Action No. 02-1773(RBW).
Sept. 21, 2006.

John Payton, Wilmer Cutler Pickering LLP, Washington, DC, Ariel B. Waldman, Kalea Seitz Clark, Ryan Patrick Phair, Samir C. Jain, Wilmer Cutler Pickering Hale & Dorr, LLP, Washington, DC, for Plaintiff.

John G. Degooyer, Philip A. Nacke, Steven C. Lambert, Foley & Lardner, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

REGGIE B. WALTON, District Judge.

**\*1** The plaintiff brings this action alleging that the defendant breached certain lease agreements that provided for the defendant's use of the plaintiff's railcars as a result of the defendant's failure to make the required lease and interest payments to the plaintiff. Second Amended Complaint ("Compl.") ¶¶ 1; 42-43. Currently before the Court is the plaintiff's motion for leave to submit a substitute expert witness report after the expiration of the deadline designated by the Court for filing such reports. Scheduling Order of August 15, 2005; December 8, 2005 Minute Order. For the reasons set forth below, the Court grants the plaintiff's motion.

The plaintiff requests that this Court afford it leave to substitute the expert witness report of Douglas Golden for the report of Stanley Wlotko, previously submitted by the plaintiff on January 23, 2006, because the plaintiff contends that it has recently discovered issues regarding the credibility of Wlotko. Plaintiff's Motion For Leave To Submit Expert Report After the Deadline ("Pl.'s Mem.") at 1. According to the plaintiff, during and after the taking of Wlotko's deposition, it became apparent that answers given by Wlotko during the deposition were inaccurate. Pl.'s Mem. at 2. For instance, the defendant's counsel repeatedly asked Wlotko whether he had "ever been terminated from a position of employment," and whether he had "ever been asked to resign from a position." Pl.'s Mem., Exhibit ("Ex.") B (Deposition of Stanley Wlotko) ("Wlotko Dep.") at 66, 85. Wlotko responded to these questions in the negative. *Id.* However, later in the deposition, after repeated questioning by the defendant's counsel, Wlotko acknowledged that his prior answers had been inaccurate and that he had in fact been asked to resign from Rail America due to alleged expense account irregularities, left Rail America the same day he was asked to resign, and that he was also asked to resign from a position at Union Pacific. *Id.* at 87. The plaintiff also contends that after the deposition was taken, it discovered that Wlotko provided inaccurate responses in his deposition regarding his educational and personal background, including his arrest history. Pl.'s Mem. at 2.

The defendant objects to the plaintiff's motion for leave to substitute the report of Wlotko with the expert witness report of Douglas Golden after the filing deadline on the grounds that: (1) the new expert's opinion contains a lower fair market value of the railcars that results in a drastic increase in the valuation of the plaintiff's liquidated damages claim (Opposition of Defendant ExpressTrak, L.L.C. To Plaintiff's Motion For Leave To Submit Expert Report After The Deadline ("Def.'s Opp'n.") at 5-8); (2) the defendant will have to incur additional expense and expend additional time preparing to depose the plaintiff's new expert (Def.'s Opp'n. at 12-14); and (3) the substitution would further delay the litigation of the case, *id.* at 14-15.

**\*2** A scheduling order issued pursuant to Federal Rule of Civil Procedure 16(b) ("Rule 16(b)") "is intended to serve 'as the unalterable road map (absent good cause) for the remainder of the case.' " *Olgyay v. Soc'y For Envtl. Graphic Designs, Inc.*, 169 F.R.D. 219, 220 (D.D.C.1996) (citation omitted). Rule 16(b) provides that "a [scheduling] [order] shall not be modified except upon a showing of good cause and by leave of the district judge...." Fed.R.Civ.P. 16(b); *see also* LCvR 16.4; *Olgyay,* 169 F.R.D. at 219. "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment. The district court may [therefore] modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.' " *DAG Enters., Inc., v. Exxon Mobil Corp.,* 226 F.R .D. 95, 105 (D.D.C.2005)(quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992)); *see also O'Connell v. Hyatt Hotels of Puerto Rico,* 357 F.3d 152, 155 (1st Cir.2004); *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir.2002); *Bradford v. DANA Corp., Inc.,* 249 F.3d 807, 809 (8th Cir.2001); *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 340 (2d Cir.2000). The focus of the "good cause" inquiry is on the moving party's reasons for seeking the modification of the scheduling order; therefore, "[i]f that party is not diligent, the inquiry should end." *DAG,* 226 F.R.D. at 105(quoting *Johnson,* 975 F .2d at 609).

Here, the defendant contends that the plaintiff was not diligent because it relied on a third party, Railroad Industries, Inc. ("Railroad Industries"), to hire Wlotko and waited until less than two to three weeks prior to the expert disclosure filing deadline to seek the service of Wlotko. Def.'s Opp'n. at 11. The Court cannot agree with the defendant's position for the following reasons.

First, the defendant's representation that Wlotko was retained by Railroad Industries, a company for which he is a consultant, is based on Wlotko's deposition testimony. Wlotko Dep. at 95. However, although Wlotko's name was provided to the plaintiff by Railroad Industries, the plaintiff has presented evidence that it was counsel for the plaintiff who actually retained Wlotko and counsel sent Wlotko a letter confirming the terms of his retention. Pl.'s Reply Mem., Ex. E. Second, the defendant's assertion that the plaintiff's failure to retain Wlotko until two to three weeks before the expert witness report deadline would expire is additional evidence of the plaintiff's lack of diligence is also unpersuasive. "Central to [the] required showing of diligence is whether the movant discharged [its] obligation under Rule 16 to collaborate with the district court in managing the case." *Jackson v. Laureate, Inc.,* 186 F.R.D. 605, 607 (E.D.Cal.1999) (citing *In re San Juan Dupont Plaza Hotel Fire Litig.,* 111 F.3d 220, 228 (1st Cir.1997)). Generally, parties are required to participate from the outset in creating a workable Rule 16(b) scheduling order and then to diligently attempt to adhere to that schedule throughout the subsequent course of the litigation. *Jackson,* 186 F.R.D. at 607 (citation omitted). Here, in accordance with the scheduling order, the plaintiff timely filed its expert witness report by January 23, 2006. The plaintiff has also closely adhered to the other components of the scheduling order throughout the course of the litigation.

**\*3** In addition to assessing whether a plaintiff has assisted the Court in creating a workable Rule 16(b) order, some courts require a plaintiff to demonstrate diligence under Rule 16's "good cause" standard, by showing that its "noncompliance with a Rule 16 deadline occurred ..., notwithstanding [its] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference." *Id.* (citing *Johnson,* 975 F.2d at 609). In this case, the plaintiff relied on Wlotko's expert witness report until his deposition was taken, during which and following the deposition it was revealed that he had provided inaccurate information regarding his personal, professional, and educational background. There is no evidence in the record that the plaintiff had reasons to doubt Wlotko's credentials or his recommendation by Railroad Industries prior to the expiration of the expert witness disclosure deadline.[FN1] Moreover, the Court is not convinced that if the plaintiff had hired Wlotko before it did that it would have definitely discovered the information about his false representations before the discovery was made.

FN1. The plaintiff represents that Railroad Industries is a reputable railroad consulting firm with over twenty years experience in the railroad consulting business and that its services include the provision of expert witness testimony. Pl.'s Mem. at 4.

Some courts also consider the "possible prejudice to the party opposing the modification." *Inge, 281 F.3d at 625* (citation omitted); *see also Reliance Ins. Co. v. Louisiana Land & Exploration Co., 110 F.3d 253, 257 (5th Cir.1997)*. However, the existence or degree of prejudice to the party opposing modification as an additional reason for denying a motion to modify a scheduling order, has "not ultimately [been considered by courts as] determinative." *DAG, 226 F.R.D. at 110; see also Johnson, 975 F.2d at 609* (citing *Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138,141 (D.Me.1985)*). As noted above, the defendant contends that it would be prejudiced by the post-deadline submission of the new expert report because (1) the plaintiff is presenting a new theory for determining the fair market valuation of the railcars, (2) it would be subjected to expending additional time and money conducting discovery and otherwise additional costs related to litigating this case, and (3) the resolution of this case would be further delayed. However, the cases on which the defendant relies in support of its argument that it would be prejudiced by the substitution of Golden's expert witness report are inapposite.

In *DAG Enterprises Inc. v. Exon Mobil Corp.*, five months after the close of expert discovery and the filing of *Daubert* [FN2] motions, the plaintiffs moved for leave to seek additional discovery and redraft their expert witness reports in order to respond to a defense raised in a *Daubert* motion relating to their profit margins.[FN3] *226 F.R.D. at 100-01*. The *DAG* court noted that granting the plaintiffs' motion would "instigate a new cycle of expert discovery" because the plaintiffs would be resubmitting multiple expert reports "premised upon a completely different theory of damages calculation." *Id.* at 101, 110. The defendants would then need to respond with the submission of additional expert witness reports, and an entirely new round of depositions would need to be conducted. *Id.* at 110. The instant case is distinguishable from *DAG* in several respects. Unlike *DAG*, where the plaintiffs sought to resubmit multiple new expert witness reports, the plaintiff here seeks to submit only one new expert witness report, which addresses a single issue in this case.[FN4] Also, contrary to the defendant's contention, the plaintiff is not raising new theories or legal issues by substituting reports, as both the original and proposed substitute reports relate to the plaintiff's liquidated damages claim and utilize the same methodology to calculate the fair market value of the refrigerated railcars in determining the plaintiff's liquidated damages.[FN5]

FN2. *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993)*.

FN3. Specifically, the plaintiffs wanted to discard their old profit margins altogether, rely on entirely new values premised upon a completely different theory for calculating their damages, and draft new reports incorporating the new data. *DAG, 226 F.R.D. at 101*.

FN4. This issue-the value of the plaintiff's liquidated damages claim-requires the calculation of the fair market value of the refrigerated railcars. Pl.'s Mem. at 5; Def.'s Opp'n. at 3.

FN5. In contrast, in *DAG,* the plaintiffs initially relied on the projected profit margin DAG would have earned on *hypothetical* future sales at petroleum stations that were part of the defendants' divestiture assets. *226 F.R.D. at 98*. The plaintiffs' damages experts assumed that the combined supplier/distributor margin listed in the Divestiture Asset Bid Book ("Bid Book"), which was provided by Exxon Mobil Corporation to potential bidders during the divestiture process, accurately represented the margins DAG would have earned as a distributor. *Id.* However, when the defendants' expert pointed out that the plaintiffs' expert's reliance on the Bid Book margins was a mistake and would result in the plaintiffs' damages model yielding zero damages, the plaintiffs sought to rely, after the expert report filing deadline had expired, on data concerning the *actual* performance of the petroleum stations in the post-acquisition period for calculating their damages. *Id.* The *DAG* court determined that granting the plaintiffs' motion would result in the

plaintiffs resubmitting multiple expert reports "premised upon a completely different theory of damages calculation ." *Id.* at 101, 110. Hence, the plaintiffs in *DAG* sought to change the methodology used to calculate their damages, whereas, in the present action, the plaintiff is relying on the same methodology for calculating the fair market value of the railcars.

**\*4** Similarly, *Softel, Inc. v. Dragon Medical & Scientific Communications, Inc.,* 118 F.3d 955 (2d Cir.1997) is not on point. In *Softel,* the Second Circuit upheld the district court's decision to preclude a party from using a new expert. *Id.* at 963. The district court had granted the plaintiff leave to substitute a new expert for its former expert and had given the plaintiff a specific deadline by which it needed to submit the new reports so that the overall case schedule would not be disrupted. *Id.* at 961. One day prior to the deadline, the plaintiff sought extra time to file the report, which the district court denied because the plaintiff gave no plausible justification for failing to meet the deadline and because of "potentially significant shifts in theory." *Id.* at 961-63. In contrast to what transpired in *Softel,* the plaintiff timely filed its original expert report; thus, the plaintiff's need to substitute its expert report occurred after complying with the scheduling order. Further, both the original and substitute expert reports address the calculation of the fair market valuation of the railcars based on the same methodology.[FN6] Since Wlotko's credibility has been seriously damaged as a result of the plaintiff's discovery that he provided inaccurate information as to his professional, educational, and personal background, it is likely that the plaintiff's ability to establish the true value of its liquidated damages claim will be significantly impaired if it has to rely on Wlotko's testimony. Therefore, the potential prejudice to the plaintiff is substantial.

> FN6. Both experts determined fair market value by assessing the physical condition and age of the cars through an onsite inspection, consulted with lessors and other industry participants to determine market demand (the availability of cars for lease and purchase), and considered specific offers for leasing and purchasing the cars. Def .'s Mem., Ex. 2; Pl.'s Mem., Ex. A.

The potential prejudice faced by the movant is sometimes also considered by courts when determining "good cause." *See DAG,* 226 F.R.D. at 111 (citation omitted). Here, if the Court denies the plaintiff the opportunity to substitute its expert witness, the plaintiff would potentially sustain a substantial prejudice. As noted above, since Wlotko's credibility has been seriously damaged as a result of the plaintiff's discovery that he provided inaccurate information as to his professional, educational, and personal background, it is likely that the plaintiff's ability to establish the true value of its liquidated damages claim at trial will be significantly impaired if it has to rely on Wlotko's testimony. And, the plaintiff's liquidated damages claim is central to this litigation. Thus, the substantial risk of unfairness to the plaintiff because of Wlotko's dishonesty more than adequately supports the substitution of Golden as its witness.

Based on the foregoing reasons, the plaintiff's Motion for Leave to Submit Expert Report After the Deadline is **GRANTED.**[FN7]

> FN7. Upon the defendant's request, the Court will afford it the opportunity to depose Golden if his deposition has not yet been taken or otherwise put itself in the position to challenge Golden's potential testimony.

**SO ORDERED** this 21st day of September, 2006.[FN8]

> FN8. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

D.D.C.,2006.

National R.R. Passenger Corp. v. Expresstrak, L.L.C.
Slip Copy, 2006 WL 2711533 (D.D.C.)

END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1

2

3

4

5

6    **Exhibit 4:** *Pembroke v. City of San Rafael,* **1994 WL 443683 (N.D. Cal. 1994).**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Not Reported in F.Supp., 1994 WL 443683 (N.D.Cal.)

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.
United States District Court, N.D. California.
Cassandra PEMBROKE, a minor By and Through her guardian ad litem, Donna PEMBROKE, Plaintiff,
v.
CITY OF SAN RAFAEL, et al., Defendants.
No. C 92 1869 BAC.
Aug. 2, 1994.

*ORDER*

CAULFIELD, District Judge.
  **\*1** This case comes before the court for consideration of three motions by the parties. Upon due consideration of the materials presented, the court rules as follows: (1) plaintiff's motion for leave to file and serve a first amended complaint is DENIED; (2) defendant's motion to exclude plaintiff's experts at trial is GRANTED; and (3) plaintiff's motion to modify pretrial order to allow designation of expert witnesses is DENIED.

*BACKGROUND*

   On May 26, 1992, plaintiff filed a complaint for the alleged use of excessive force by police officers and unlawful arrest of plaintiff. The complaint alleged claims for relief for civil rights violations-excessive force, Civil Code Section 51.7, negligence, and negligent infliction of emotional distress. Named as defendants were the City of San Rafael, the San Rafael Police Department, and chief of the San Rafael Police Department.

   The court issued a scheduling order on October 12, 1992 setting certain deadlines in this action. The order set the deadlines: April 30, 1993-discovery cut-off; May 15, 1993-designation of expert witnesses; June 9, 1993-pretrial conference; and June 21, 1993-trial.

   In January 1993, plaintiff obtained responses to interrogatories and a document production identifying Officer Charles Hubler, Corporal Douglas Fletcher, and Sergeant James Kelly of the San Rafael Police Department as the police officers involved in the alleged wrongful actions toward plaintiff which form the basis of the Complaint. Plaintiff took the depositions of the three officers in March and April 1993.

   On October 12, 1993-five months late-plaintiff submitted her pretrial statement and therein designated two expert witnesses. Defendant has moved to exclude expert testimony at trial for plaintiff's failure to timely designate experts. Plaintiff has filed a cross-motion to modify the scheduling order to permit the designation of experts.

   On November 10, 1993, plaintiff filed her motion for leave to amend her complaint to add as defendants three members of the San Rafael Police Department: Officer Charles Hubler, Corporal Douglas Fletcher, and Sergeant James Kelly.

*DISCUSSION*

A. *Amendment Of The Complaint.*

Leave to amend "shall be freely given when justice so requires." Fed.R.Civ.Proc. 15(a). Although delay alone does not justify denial of leave to amend, undue delay plus prejudice to the opposing party may justify denial of leave to amend. *See Loehr v. Ventura County Community College Dist.,* 743 F.2d 1310, 1319-20 (9th Cir.1984). Here, the combined undue delay and prejudice to the opponent necessitates denial of leave to amend. The futility of the proposed amendment provides a separate basis for denying leave to amend. *See id.*

There was undue delay before this motion was made. Plaintiff actually knew of the existence of the proposed defendants for at least ten months before filing this motion. The police officers' identities were provided in defendants' responses to interrogatories and document production in January 1993. Plaintiff deposed the police officers in March and April 1993. Plaintiff offers no convincing reason for the delay in moving to amend until November 1993.[FN1]

**\*2** Both the proposed and the existing defendants may be prejudiced by the amendment of the complaint at this late date because this motion was filed after the completion of discovery, the pre-trial proceedings, and trial preparation. The existing defendants have shown prejudice. The defendants have approached this case-based on a fair reading of plaintiff's complaint-as one for municipal liability based on an alleged pattern and practice of inadequate training and supervision. The addition of individual officers may well change the defense strategy. Defendants may well have pursued a different strategy had they known earlier-before the discovery cut-off and before preparing for trial-that plaintiff intended to name the individual police officers. Had the proposed defendants been timely named in this action, both they and the defense counsel might have chosen to proceed differently at the depositions.

Amendment at this late date would complicate and delay the case because the individual officers would be entitled to conduct discovery, and may need additional time to prepare for the trial of this case. The existing defendants would be subject to additional discovery to accommodate the individual defendants. The individual officers would not be required to simply step in and accept this case as they find it, without being afforded the opportunity to prepare their own defenses. Although plaintiff lumps the existing and proposed defendants into a single group, each defendant is entitled to chart his own defense. The individual officers may wish to choose their own attorneys and prepare their own defenses, because they may be personally liable for any punitive damages awarded. The individual officers may take a different approach to the defense of this case than that taken by the existing defendants. Plaintiff does not explain why the existing and proposed defendants, rather than plaintiff, should suffer the consequences of her delay in bringing the individual officers into the case.

A second basis for denying leave to amend is that the proposed amendment would be futile. An amendment is futile if the pleading is to be amended to assert a claim barred by the statute of limitations. Plaintiff's motion to amend was filed after the expiration of the two year statute of limitations; the only hope for plaintiff is to show that the amendment would relate back to the original timely filed complaint.

Where a plaintiff seeks to add a new party, relation back is controlled by Federal Rule of Civil Procedure 15(c)(3), which permits relation back of the amended pleading only if several conditions are satisfied. One condition for amendment-and the condition that presents an insurmountable hurdle for plaintiff-is that it must be established that the defendant "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him." Fed.R.Civ.P. 15(c)(3)(B). This permits amendment to cure a formal defect such as a misnomer or misidentification.

**\*3** Here, the individual officers were not misnamed. They were not named at all, and they cannot be named after the limitation period has expired. *See Worthington v. Wilson,* 8 F.3d 1253, 1256-57 (7th Cir.1993); *Maior v. Koletsos,* 823 F.Supp. 497, 498 (N.D.Ill.1993). Plaintiff knew from the day she was detained by the police that individual officers had taken the action she complains of, but made no attempt to identify them in the complaint or to otherwise signal her intent to seek redress from them. Plaintiff could easily have obtained the names of the police officers from the publicly-

available police report, but failed to do so. The court will not permit relation back of the proposed amendment because plaintiff seeks to add new defendants, the existence of whom she had known about since the day she was arrested and the identity of whom she had known about for ten months before seeking leave to amend. *See G.F. Co. v. Pan Ocean Shipping Co., Ltd.,* 23 F.3d 1498, 1503 (9th Cir.1994) (" 'Rule 15(c) was never intended to assist a plaintiff who ignores or fails to respond in a reasonable fashion to notice of a potential party.' ").

B. *Designation of Expert Witnesses.*

Federal Rule of Civil Procedure 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge...."

[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.... Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reason for seeking modification.... If that party was not diligent, the inquiry should end. *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir.1992).

The scheduling order set a deadline of May 15, 1993 for disclosure of expert witnesses. Plaintiff failed to meet that deadline and, in fact, did not disclose experts until five months later. Plaintiff was not diligent in attempting to comply with the court's scheduling order or in seeking a modification of the order. Plaintiff's claimed excuses for failing to comply with the scheduling order and for failing to promptly seek its modification are unpersuasive. Plaintiff claims that her discovery efforts were interrupted when defendants filed a motion for summary judgment two days before the discovery cut-off. The impact of this is unclear because plaintiff does not state that she was in the process of responding to any discovery at the time the motion was filed. If plaintiff meant that she intended to propound discovery requests in that two day time period, the argument fails because the scheduling order required that the discovery responses-not requests-be completed by the discovery cut-off. Plaintiff also argues that she designated her experts at the "most appropriate opportunity" by including them in her October 1993 pretrial statement. The designation of pretrial experts is separate and apart from the pretrial conference statement. Nothing prevented plaintiff from designating the experts in the intervening five months. There was no reason for plaintiff to wait until the resolution of the summary judgment motion to designate her experts. Finally, plaintiff argues that some uncertainty existed because the court postponed the June 21, 1993 trial date at some time "during the period of time between April 28, 1993 and May 26, 1993." The postponement cannot excuse the failure to timely designate experts because the trial date was postponed by the court's order of May 26-eleven days after the expert designation was due. Additionally, a change of one date does not automatically change all dates on the scheduling order. Plaintiff has failed to show good cause to modify the scheduling order to permit a late designation of expert witnesses. Because the experts were not timely designated by plaintiff, they cannot testify at trial.

*DISPOSITION*

**\*4** 1. Plaintiff's motion for leave to amend is DENIED.

2. Defendants' motion to exclude experts at trial is GRANTED. Testimony of plaintiff's experts shall not be permitted at trial. Defendants' request for sanctions in the motion is DENIED.

3. Plaintiff's motion to modify the pretrial scheduling order to permit designation of experts is DENIED.

IT IS SO ORDERED.

FN1. Plaintiff did mention in a footnote in her May 1993 opposition to the motion for summary judgment that she wanted to name the police officers as defendants. That was not sufficient to obtain the required leave to amend the complaint. The fact that plaintiff mentioned the intent to amend in May 1993 yet waited until November 1993 shows a

clear delay. Plaintiff suggests that she was unaware of the need and could not make the motion until after the court ruled upon the defendants' summary judgment motion. The pendency of a motion for summary judgment does not stay activity in a case.


N.D.Cal.,1994.
Pembroke By and Through Pembroke v. City of San Rafael
Not Reported in F.Supp., 1994 WL 443683 (N.D.Cal.)


Motions, Pleadings and Filings (Back to top)

• 3:92CV01869 (Docket) (May. 26, 1992)
END OF DOCUMENT

(C) 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Andrew Shalaby v Newell Rubbermaid, Inc., et al.
**United States District Court, Southern District of CA (San Diego)**
**Case No. 3:07-cv-02107-W-POR**

## PROOF OF SERVICE

STATE OF CALIFORNIA     )
                                   ) ss.
COUNTY OF LOS ANGELES  )

      I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 633 West Fifth Street, 21st Floor, Los Angeles, California 90071.

      On **September 12, 2008**, I served the document described as:

**AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO DESIGNATE EXPERT WITNESS JASON LUSK**

    on the interested parties in this action as follows:

SEE ATTACHED SERVICE LIST

  X    **VIA THE ECF FILING SYSTEM** .

I declare under penalty of perjury under the laws of the United States that the above is true and correct and that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on September 12, 2008, at Los Angeles, California.

                                 /s Shelley Hurwitz
                                  Shelley G. Hurwitz

**Andrew Shalaby v Newell Rubbermaid, Inc., et al.**
**United States District Court, Southern District of CA (San Diego)**
**Case No. 3:07-cv-02107-W-POR**

**SERVICE LIST**

Mark D. Epstein
Alborg, Veiluva & Epstein LLP
200 Pringle Avenue, Suite 410
Walnut Creek, CA  94596
(925) 939-9880
(925) 939-9915 - Fax

Attorneys for Plaintiffs

Lowell T. Carruth
McCormick Barstow LLP
5 River Park Place East
P.O. Box 28912
Fresno, CA  93720-1501
(559) 433-1300
(559) 433-2300 – Fax

Attorneys for Western Industries, Inc.

Richard A. Ergo
Cathleen S. Huang
Bowles & Verna LLP
2121 North California Boulevard, Suite 875
Walnut Creek, CA  94596
(925) 935-3300
(925) 935-0371 – Fax

Attorneys for Worthington Industries

# 5601037_v1

CASE NO.:  07-CV-2107 W                    8
AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO DESIGNATE EXPERT